May it please the Court. My name is Robert Nelson. I represent the appellants in this case. I submit, Your Honors, that this case is straightforward. The Supreme Court and this Court have long adhered to the age-old principle of American jurisprudence that legislation is presumed to apply only within the territorial jurisdiction of the United States unless Congress has clearly expressed its affirmative intention to the contrary. Counsel, I hate to interrupt you, but right there is the problem I have with your argument. The manufacturing of the airplane took place totally in the United States. The tort, if anything, occurred afterwards, and the statute applies, as I understand it, and please correct me if I'm wrong, applies only in the United States, and the manufacturing took place here. So there's not a question of the presumption. Tell me where I'm wrong. Your Honor, thank you. You're wrong, if I may submit, because if your argument is correct, that is that the statute only applies to the filing of lawsuits in this country. That is, it's a statute of repose only. If that's all that it is and it has nothing to do with what goes on outside the United States, then I would submit that virtually any case you could make that same argument. So, for example, in the Smith case, the Supreme Court Smith case, it held that the presumption would apply in the context of a Federal Tort Claims Act case. But in that case, what occurred in the United States was the waiver of sovereign immunity. That's what the Federal Tort Claims Act is about. It's a waiver of sovereign immunity. That conduct occurs entirely in the United States. Has to, by definition. And I would submit, your Honor, in every case, every Supreme Court case and Ninth Circuit case that we have referenced in the briefs, both sides, quite frankly, you'd find the same to be true. That is, much of the conduct at issue occurs in the United States. All right, the Smith case had a waiver. There was no waiver here. And the tort occurred after the manufacturing of the airplane. That's why I still don't understand. And GERA was designed for that. It was not designed to respond to a tort claim. And if we follow your reasoning, people outside of the United States would have more rights than our own citizens. And unless Congress specifically authorized that, I don't think we should authorize it. Is not all the conduct covered by GERA the following of civil claims, tort claims or otherwise, in the United States? That is the following of actions in the United States in the Federal Court. I'm sorry, I didn't hear the beginning of your question. I'm sorry. Is not the conduct subject to GERA the following of lawsuits? Absolutely. Absolutely. That's what I would say. That's correct. Absolutely. That's what GERA is all about, is about the filing of lawsuits in the United States. OK, I agree with that. But I also would suggest, Your Honor, if you looked at every case that deals with this issue of extraterritoriality, you'd find the same to be true. For example, the Title VII case, the Aramco decision. That involves filing a suit in the United States. All of these cases involve filing suits in the United States. Every statute on the books involves filing a suit or, in the case of GERA, not filing a suit in the United States. That's the conduct that American statutes deal with. And I submit that this case is not unlike any of the other cases that we've submitted to you that demonstrate that the presumption against extraterritoriality applies. Would you feel the same if the statute said, no federal court shall have jurisdiction, and then repeated the language? Would that be different? You know, Congress does that to us. I say that gently. From time to time, they tell us that we don't have jurisdiction. Most recently in the immigration area, they told us over certain petitions for review from within the Immigration and Naturalization Service that we don't have jurisdiction. Would that be different? It's hard to know. I can't. As I sit here, I'm not prepared to. Same case, same accident, same horrible accident, same loss of life, same airplane, same age. The only difference is, in my hypothetical, instead of GERA saying no civil action may be brought, it says the courts of the United States shall have no jurisdiction over a civil action brought, et cetera, et cetera. It's a very interesting question. How is the language of GERA as written different from that? I see GERA as a statute of repose and limiting what can and cannot be filed in the United States. And in some respects, it's not. The problem is I haven't thought through that issue, and I'm really not prepared to comment on it. But what GERA is, is a statute of repose. And I would submit that all statutes on our books give lawyers, plaintiffs, the opportunity to file suit in the United States or not, depending upon what the statute provides. And so that's why I'm troubled by the distinction that the trial court made and that Judge Nelson is making, because it really, it's a distinction without a difference. The fact that GERA is a statute of repose doesn't mean that it doesn't affect conduct that takes place anywhere outside the country, in this case. I mean, the fact of the matter is that conduct occurred outside the country, and we sought to file suit. But the statute says an aircraft manufacturer can only face a products liability action in an American court for up to 18 years after a plane's delivery. Not after a tort claim has been filed. Well, I'm not sure how to respond to that, Your Honor, other than to say that the reason Congress passed GERA was to prevent lawsuits that are old, okay, and that are more than 18 years old past delivery. And here, we have no argument with the fact that GERA is a statute of repose. The tort occurred outside the 18-year period. We don't argue that that's not the case. We concede that readily. But what we don't concede is that GERA doesn't apply, what we don't concede is that GERA applies outside the United States. It's not unlike any other. I don't see why you would say that GERA is different, simply because it has that language that you've just stated. Let me try one more time, and then I'll let you proceed. All right. If the tort occurred 25 years after the manufacture of the airplane in the United States, would the suit be barred? Yes. Okay. So you're saying that people outside the United States really have greater rights than United States citizens, and could that be what Congress intended? What Congress intended when they passed this statute is that people in the United States, if they're injured in the United States, irrespective of where the aircraft came from, whether it was an American aircraft or a foreign aircraft, they would be barred from suit in the United States. That's what Congress intended. That's what they said. And I suggest that it's not for this Court to speculate whether or not they may have intended what you would regard as an anomalous result. My understanding is that the background of the statute is that aircraft manufacturers, including Raytheon's predecessor, Beechcraft, basically went to Congress and said, if you don't enact this statute, we're going to stop making airplanes, small noncommercial aircraft of this type, in the United States. We'll have to build the aircraft outside the United States. And so Congress passes GARA. That suggests to me the purpose was to insulate American manufacturers from lawsuits of this type. And when you say of this type, of this type, you mean of the kind, our lawsuit? Yes. Well, I would suggest not, Your Honor, unless they specifically said we're going to bar foreign claims arising outside the United States as well. The fact of the matter is when you look at the legislation itself, it doesn't say anything about extraterritorial application. Or not. Or not. But we've got a presumption against extraterritoriality, unless Congress is explicit about it. Here they are not explicit. You cannot show me anywhere in the legislative history where they address the issue of extraterritoriality of the statute. It is not there. And I submit that if you were to say that GARA, the presumption, does not apply, then you are effectively legislating. You are saying that this is what Congress intended. We believe, based upon certain language here and there, that maybe this is what Congress intended. But you can't do that because you've got the presumption against extraterritoriality, which the Supreme Court has repeatedly said, repeatedly said, that must be construed very restrictively. It has to be a clear intent. Very, very, in fact, just last year, and we didn't cite this because it came out after our briefing, but there was the AT&T versus Microsoft case, and that's at 127 Supreme Court, 1746, 2007. This was a case involving the Patent Act, and AT&T claimed that Microsoft was violating a patent because of certain conduct that took place outside the United States. Justice Ginsburg wrote an opinion basically saying, well, we're not going to enforce the Patent Act overseas because of this presumption against extraterritoriality, even though under the Patent Act, it had an exception for conduct that took place outside the United States. And despite the legislative language in the Patent Act itself, Justice Ginsburg said, we have to look at this so restrictively that we're not going to allow the statute to apply outside the United States. In your research, come across a case where any federal court, including the Supreme Court of the United States, has said, this is the language we're talking about. This is a clear indication that Congress intended that this applied extraterritorially. This statement by Congress overrides the presumption against extraterritorial application. Your Honor, there may be a case. I am not aware of it as I sit here right now, and that goes to show exactly what I'm saying, which is that the presumption against extraterritoriality is something that is very rarely broken. Very rarely, if ever, broken. And the only way that certain courts have been able to apply statutes against arguments about extraterritoriality is to say that the conduct took place in the United States. And those are the only cases. And I'm speaking to the Percutus case, which is a Ninth Circuit case, in which there was a question about the application of, I think it was CERCLA, and whether a discharge occurred either in Canada or in the United States. And the court basically said the discharge occurred in the United States. That's where the tort occurred. Therefore, the presumption against extraterritoriality does not apply, and we're going to find that CERCLA liability does apply. And that's the only context. That's why I submit to you that this is a straightforward case in the absence of clear legislative intent. And it doesn't mean, Judge Nelson, that there could be an anomalous result. That's okay. It's not your job at this time to say what Congress would or would not have wanted. The fact is Congress didn't address extraterritoriality. And I would submit the fact that they didn't address extraterritoriality suggests that they didn't want it to apply overseas, because they talked about the imbalance of trade. They talked about how we were getting much more European imports, and the exports were being reduced. But they didn't do anything about it. And that suggests, well, they were aware of a problem that they were potentially trying to address, and yet they didn't address it. And so it seems to me that that history demonstrates, in fact proves that Congress didn't intend, and certainly not the very restrictive standard that must be applied in this context, that they did not intend for this statute to apply extraterritorially. Did you want to save a little time? I'm sorry. Go ahead. Maybe I'm overlooking this, oversimplifying the purpose of GARA. But I think the language is clear to me. The focus of GARA is the locus of the filing of the lawsuit, tort lawsuit or otherwise, not where the tort occurred. Whether the tort occurred outside the United States or in the United States is irrelevant to the language of that statute. Excuse me. I understand that your argument, and I understand what you're saying. My comment in response is that if that is the driving force in a ruling in this kind of case, I would submit that all of these cases that we've talked about previously were wrongly decided, every single one of them. It wasn't your phone. Oh, good. Did you want to save a little time for me? I would, Your Honor. Thank you very much. Thank you very much for your argument. Would you get a gum sheet from the clerk and fill out the citation to the AT&T case that you cited during argument? Absolutely. I take it it was not in your brief. It was not because I believe it was. It was not in your brief and you didn't file a 28-J. I didn't. So fill out the gum sheet and we'll give one copy to your opponent. Counsel? Thank you, Your Honor, and good afternoon. May it please the Court, my name is Kirk Jenkins, and I represent the Apelli Raytheon Aircraft Company. Your Honor, as the Court might guess, the only thing I agree with my colleague about is that at bottom this is a simple case. But the plaintiffs have been making a fundamental error since this case began, and the error is they've been conflating principles that belong in conflicts of law and indeed vintage principles from conflicts of law into what is fundamentally merely a statutory construction case. Now, I'm going to address three distinct issues over the next few minutes. The first one is by far the most important, and it's an issue that gets precious little attention from the plaintiff, and that is how do we determine whether a statute is being applied extraterritorially in the first place? That's what the court in the D.C. Circuit in Massey called the threshold question. And in our case, the answer to that question, which is there is no extraterritorial application here, is dispositive. The Court doesn't need to reach what I'm going to talk about as my second and third issues. But there are additional reasons to affirm that I'll deal with. The second one, is there any indication in the record that these lawsuits arising from foreign accidents were having effects within the boundaries of the United States? If the answer to that question is yes, then the cases are clear. The presumption against extraterritoriality never comes into play. And again, the answer is yes. Thirdly, the third question is, is there a clear expression of congressional intent to reach these lawsuits arising from foreign accidents? If the answer to that question is yes, even if the presumption were to apply, it would be overcome by that clear evidence. And once again, as I'll talk about in a moment, the answer is yes. Let's begin at the beginning with the Massey case, what Chief Judge Mikla of the D.C. Circuit called the threshold question. He said before we get into all the rest of this stuff, we have to figure out, is this statute being applied extraterritorially in the first place? And his definition of the principle was this. He said, the extraterritoriality principle provides that, and now he's quoting the restatement second and third of the law of foreign relations. Rules of the United States statutory law, whether prescribed by federal or state authority, apply only to conduct occurring within or having effect within the territory of the United States. And that closes the quote from the restatement. Then one final comment. By definition, he says, an extraterritorial application of a statute involves the regulation of conduct beyond U.S. borders. Now, if we look at the authorities for confirmation of this Massey restatement test, which is you figure out what the statute regulates, and you ask, where did that happen in this case? We find that in Gushy Brothers, Henry French, Stevens v. Premier Cruzes, and in the Massey case and the restatement. So let's apply that here. And we begin, as all statutory construction cases do, with the plain language of the statute. And I agree completely with Judge Timlin. We look at the language of the statute. It says, no civil action may be brought. Well, apply the Massey restatement standard. What conduct does that regulate? In order to prevail here, the plaintiffs would have to persuade this court that that clear language actually regulates the operation, the flying of a general aviation aircraft. It clearly doesn't. Judge Timlin was correct. That language regulates the filing and the prosecution of lawsuits in American courtrooms. I want you to imagine hypothetically that Congress passes a statute that says any American corporation with more than 500 employees must allow their employees to engage in collective bargaining, and that that hypothetical American company has an offshore operation in a company, in a country that prohibits union organizing. And an employee of the subsidiary in France or Belgium or whatever that's subject to that law files suit in the United States. Would the presumption apply? The question would be, number one, what conduct is that statute regulating? And it seems to me in the court's hypothetical the answer is the act of collective bargaining. Does that occur at the locus of the employer or does it occur at the parent company? I assume based on my hypothetical, to be fair, that it must occur in the foreign country because that's the country that prohibits union organizing. Then you would apply the definition and you'd conclude that this statute does regulate conduct in a foreign country. Then your question would become, is the conduct that's being regulated, does it have significant domestic effects? The answer in the court's hypothetical may possibly be no. The final question would be, did Congress clearly evidence its intent to apply the statute to foreign conduct? And, of course, that would depend on the exact facts when that case arose. The presumption would apply, but ultimately would it be overcome? It would depend on the facts in a particular case. Note that the language, no civil action may be brought, regulates inherently domestic conduct. At the end of the day, the bottom line of this case is that for Congress to close the doors of a San Francisco courtroom to a lawsuit is simply not extraterritorial conduct. In fact, there is no extraterritoriality issue here, and the court can address that issue and doesn't need to reach the remaining two things I'm going to talk about. But there are additional reasons to affirm here. We talked a moment ago about what the case is called the domestic effects exception, and what that means is the court asks, are these lawsuits arising from foreign accidents? Do they have effects within the United States? If the answer is yes, then there's no reason for the presumption against extraterritoriality to apply. And for that test, we see Massey, the case I cited a moment ago, the restatement, and several other cases, including the cases of this court, Henry Simon, Laker Airways, Pocutis, and Gushy Brothers. So the question is, do these lawsuits have domestic effects? I would suggest to the court that the record is full of that evidence. We see in the House Public Works Committee's report, they talk about the market for export of these airplanes in the years leading up to GERA has completely collapsed. We have to once again become the primary provider of these aircraft to the world. That committee specifically referred to what they called the liability problem, and that's at supplemental excerpts at page 24. The Senate committee highlighted the exact same problem. They said we've got to resuscitate the export market, and the complete destruction of the export market, the near destruction of the people that were making these aircraft in the United States, that's a domestic effect that makes the principle of extraterritoriality completely irrelevant here. Finally, the court asked, is there clear evidence of congressional intent to reach lawsuits arising from accidents that happen to occur in foreign countries? The answer is, once again, clearly yes, and it comes from the same place, that House committee that said we have to resuscitate the export market. We have to address the liability problem. The Senate committee. It was so generally known at the time exactly what was going on and what this statute was for that even President Clinton noted it in his signing statement. Now, the argument that my colleague just made, it has to amount to this. Back in the days when signing statements were meant to express the executive's intent to apply the law? That's true, but my point for citing it is not the view that that would substitute for congressional intent. My point for citing it is, Your Honor, frankly, everyone knew what this statute was about. It's in the reports of the Congress, and it even shows up in the signing statement. My colleague's argument that, yes, that material is there, but that doesn't prove that they wanted to address long-tail liability. First of all, it's circular because it implicitly assumes that the application of the statute here is an extraterritorial application. But let's say, what if we did assume that? Would the evidence of congressional, those general statements that you just referred to, would they be sufficient to overcome the presumption? Obviously, Your Honor, our position is that the court never needs to reach that, but my answer to your question is an emphatic yes, because in order to come out the other way, what the court would have to conclude is that Congress knew about the problem, they were concerned about the problem, so they labored mightily and brought forth a statute that couldn't possibly do anything to address the problem. Because in order to resuscitate that market, in order to get those companies back in that business, you have to cut the long tail of liability for these planes that are in foreign countries. It flows directly from the evidence that's all over the record. And to wrap up, I'd like to speak briefly about a few of the plaintiff's points. The plaintiff's basic argument is that what the Massey court said was the fundamental question, is this statute being applied extraterritorially? It is determined not by the Massey Restatement Test, which is what conduct does it regulate and where did that happen? It's determined by the old vintage conflicts of laws concept of the place of the tort. Your Honors, there is not a single case anywhere that has so held. There's none in the plaintiff's brief, and we've found none. We've cited roughly a half a dozen cases that have explicitly recognized the Restatement Massey Test as the proper test, with the location of the conduct. The Sosa case that the plaintiffs refer to, Sosa v. Alvarez-Machin, doesn't say that. It's a Federal Torts Claims Act case, and that statute includes a specific exemption for claims arising in a foreign country, an exemption that isn't in GERA, never even mentions extraterritoriality. The Smith case doesn't hold that that conflicts concept is how you make that decision. Again, it's a Federal Torts Claims Act case. My colleague referred to the Picudis case out of the Ninth Circuit. Now, that case is perfectly consistent with the EPA v. Massey Restatement Test, because what the court said was actually CERCLA doesn't regulate dumping of toxic materials. It regulates what's called a release. And they said, well, was there a release within the continental United States? And the answer was yes. So they said the conduct being regulated here occurred inside the United States. Therefore, there's no extraterritorial application. Your Honors, the bottom line here is it simply isn't an extraterritorial application of GERA for Congress to bar the doors of a San Francisco courtroom to a particular litigation. The evidence of domestic effect of these lawsuits arising from foreign accidents is absolutely clear in the record. And the evidence that Congress wanted to bar these lawsuits arising from foreign accidents is clear in the record. The district court was correct, and we ask that the judgment be affirmed. I have a question. This long-tail liability concern which Congress and the aircraft industry was postulating related lawsuits against aircraft companies in the United States. Yes. There was no way that Congress could overcome any concern as it sets a lawsuit being filed in a foreign country. Your Honor, if a lawsuit were filed in a foreign country, would a defendant, Raytheon or whoever, bring up GERA as a defense? Yes, I suspect the answer is yes. Would the court find that it applied? Would the court find that American law applied under those circumstances? Perhaps yes, perhaps no. Does Congress have direct authority to bar the doors of foreign courtrooms? No. Well, let's assume this case was filed in Macedonia. Yes. GERA wouldn't apply unless the Macedonian court wanted to apply it. That's correct, Your Honor. If we went over there, I suspect we would raise GERA, and the Macedonian court either would say it applied or would say it didn't. But in that case, it really would be an international conflicts case rather than a statutory construction case. It's a different question. But the aircraft industry was concerned about the heavy lawsuits against it, in other words, in favor of the plaintiffs against it, in the United States. The high verdicts are being returned? Yes. I believe what the evidence shows is that the courts were concerned about lawsuits in the United States. But there's no indication that they carved out all of the lawsuits that might arise from those airplanes that were sent overseas. They were concerned about lawsuits in the United States, period, regardless of where they came from. Okay. Did you want an opportunity to respond to the citation of the AT&T-Microsoft case? Yes, Your Honor, if I could file a short letter response of some sort. Ten days, three pages. Great. Thank you. Counsel, rebuttal. Thank you. The fact that Raytheon has conceded that it likely would seek to apply GARA if this case were filed in Macedonia demonstrates precisely the reason why we have the presumption against extraterritoriality, and that is to avoid exactly this issue where you might have a United States law in conflict with a foreign country's law. And it's an interesting admission. I'm actually quite frankly surprised that Raytheon, that the appellees did concede that they would do that. But that's one of the reasons why we have this presumption against extraterritoriality, so that we don't have conflicts with foreign laws. With regards to the Actually, the way I sort of heard his response to the question was, I don't want my opponent, if there is a suit filed in Bosnia or Macedonia, to say I've waived that. But go ahead. With regards to the legislative intent here and whether it would be sufficient to overcome the presumption, I just urge the Court to look at how rigorous the Supreme Court has been when it deals with legislative intent. And I'll refer you all to the Aramco decision, and that involved Title VII and whether Title VII applied overseas. And at 499 U.S. 251, the Court went so far as to say the following. Petitioners' reliance on Title VII's jurisdictional provisions also finds no support in our case law. We have repeatedly held that even statutes that contain broad language in their definitions of, quote, that expressly refer to foreign commerce do not apply abroad. So even when statutes talk about foreign commerce, the Supreme Court has taken such a narrow view and said we're not even going to apply the statute overseas, given the strength and the importance of this presumption. Here, the evidence is really lacking in terms of congressional intent. There is absolutely not a scintilla of evidence about accidents that occurred outside the United States in the record, that we're getting inundated with these lawsuits involving foreign claims. It's just not there. There's no evidence, zero evidence of it. And I suggest that the evidence is just woefully lacking in order to overcome the presumption, which takes us again back to what is GARA? Is it something that regulates commerce, conduct, or is it simply involving the filing of suits in the United States? Any kind of statute of repose that limits the ability of the courts to hear cases is about a case. It is about a tort that occurred but cannot be heard in the United States. So it has to, by its essence, deal with conduct. Congress doesn't create statutes just for the sake of creating a statute. It has to involve conduct. Otherwise, why do it? So here, the conduct takes place outside the United States. And GARA is part of that. I mean, to say that GARA is distinct and isolated and has nothing to do with anything is meaningless, because of course it has to do with the filing of claims when there has been a tort, when there has been something that's actionable. And so, again, I just come back to where we started. It's a straightforward application of the presumption against extraterritoriality. GARA is not qualitatively different than other statutes. It regulates conduct. Here it has to do with the filing of claims. But, of course, that necessarily assumes that there has been a tort somewhere. Otherwise, it's a meaningless statute with no effect. Okay. Moving over your time, thank you for your argument. Thank you both for your arguments. It's a very interesting case, and it may be one of first impressions. So whatever we do, you may get a chance to re-argue it in front of nine people. Thank you very much for your arguments in the briefs. They are very helpful. The case just argued will be submitted for decision, and the Court stands adjourned. All rise. This Court for this session stands adjourned. This Court is adjourned. Okay. It's me again. No, I'm just kidding. In the additional citations, where do you see me to put the little piece of paper? Or just the citations? All right. And then we… Oh, yeah. Yeah. All right. Thanks. Bye. Thank you. All right.
judges: Nelson, Hawkins, Timlin